UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

**MARKY'S MARTIAL ARTS, INC dba** : 1:19-CV03363
**KILLEARN LAKES TAEKWONDO,**

                   Plaintiff,      :       **COMPLAINT**

    against                 :

**FC ONLINE MARKETING, INC., dba FCOM,** :
                 Defendant.     :
----------------------------------X

Plaintiff, MARKY'S MARTIAL ARTS, INC. dba KILLEARN LAKES TAEKWONDO, through its counsel, T. Edward Williams, Esq., files this Complaint and alleges as follows:

### PARTIES

1. Plaintiff, Killearn Lakes Taekwondo, is a Florida limited liability company with its principle place of business at 6808 Thomasville Road Suite 107 Tallahassee, Florida 32312.

2. Defendant, FC Online Marketing, Inc. dba FCOM ("FCOM") is a New York-based web design corporation with its principle place of business located at 3601 Hempstead Turnpike Suite 503, Levittown, New York, 11756. According to the New York Secretary of State, FCOM does not have a Registered Agent, so process is served on it at its principle place of business.

### JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. 1331, federal question jurisdiction, as this case arises out of, *inter alia*, violation of federal statutes, including the Defend Trade Secrets Act

("DTSA"), 18 U.S.C. § 1831 *et seq.* This court has pendant or supplemental jurisdiction over Plaintiff's state law claims. Further, this Court has jurisdiction because the parties are completely diverse: Plaintiff is a Florida corporation and Defendant is a New York Corporation. And, the amount in controversy exceeds $75,000.00.

4. Venue is proper under 28 U.S.C. § 1391(a) in the District Court for the Southern District of New York because the Defendant's principle place of business is in Nassau County, New York, which is within this District. Further, venue in this District is fixed by agreement between the parties.

## GENERAL ALLEGATIONS

5. Plaintiff is a martial arts school that teaches martial arts and self-defense techniques to children, teens, and adults.

6. Plaintiff's business is nine miles from the Georgia-Florida border, and Plaintiff has students from Georgia and Florida.

7. Until 2012, Plaintiff was a franchisee of a larger taekwondo company, but Plaintiff separated from the franchise over problems about theft of Plaintiff's territory and clients.

8. After breaking away from the franchise, Plaintiff sought to market its martial arts school to attract more customers.

9. Plaintiff specifically sought to attract more customers in Tallahassee and Georgia.

10. Defendant holds itself out as an internet marketing company that builds websites for taekwondo companies throughout the United States.

11. Defendant only markets its services to companies that specialize in teaching taekwondo.

12. Defendant promises its clients that Defendant can create and optimize its clients' websites in such a way as to create (or increase) traffic to their websites, and thereby, increase its clients' profits.

13. Defendant's website has testimonials from past and current clients.

14. Defendant's past and current clients say that Defendant's website building and website optimization services allowed them to enroll an additional "30–40 people" each month; that Defendant's services helped them earn "a terrific living"; that Defendant's services helped them increase their monthly billing to "$30,000.00 each month"; and that Defendant's services helped them get enrollment "everyday."[1]

15. In 2016, Plaintiff hired Defendants to build Plaintiffs a website and optimize that website to allow Plaintiff to attract more customers.

16. The parties entered into a Subscription Membership Agreement ("Subscription Agreement").

17. There is another document called the General Terms Agreement, but it does not appear that the parties executed the General Terms Agreement.

18. The Subscription Agreement references the General Terms Agreement, but, in the event of a conflict, the Subscription Agreement controls. Subscription Agreement, at Arts. 1.2, 1.5.

19. Although the General Terms Agreement is separate from the Subscription Agreement, it does not include separate consideration.

---

[1] FCOM's landing page (February 5, 2019), http://www.fconlinemarketing.com/

20. The Subscription Agreement requires the payment of an Initiation Fee and a Monthly Subscription Fee. Subscription Agreement, at Art. 4.1.

21. The Subscription Agreement defines confidential information and trade secrets.

22. Article 2.2 of the Subscription Agreement defines confidential information:

> Confidential Information: means any written information or information that is stored by electronic means which (i) relates to this Agreement, (ii) is received by one of the parties from the other [sic] and (iii) is marked "Confidential," "Proprietary" or bears a marking of like import or which the Disclosing Party states in writing at the time of transmittal to, or receipt by, the Receiving Party is to be considered confidential.

*Subscription Agreement*, Art. 2.2.

23. Article 2.2 also defines trade secret:

> Trade Secret: means any oral, written, or documentary information or information that is stored by electronic means that: (i) derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.*

24. The Subscription Agreement requires Defendant to preserve Plaintiff's trade secret and confidential information in perpetuity. *Id.*, at Art. 3.2.

25. Defendant created The Subscription Agreement on December 19, 2011.

26. The Subscription Agreement was last revised on December 19, 2011.

27. The Subscription does not have a signature page.

28. Instead, Plaintiff was asked to execute the Subscription Agreement online by clicking a series of buttons to indicate consent.

29. The General Terms Agreement does not permit a party to similarly click a series of buttons to indicate consent.

30. Plaintiff entered into the Subscription Agreement and paid the Initiation Fee and the Monthly Subscription Fee.

31. Around January 2018, Plaintiff discovered that Defendant was selling the exact website it sold Plaintiff to Plaintiff's competitors.

32. Based on this discovery, Plaintiff gave Defendant notice of its intention to terminate the Subscription Agreement 30 days hence.

33. Plaintiff terminated the Subscription Agreement in February 2018.

34. On or around July 9, 2018, Plaintiff received messages from existing and prospective customers who sought to unsubscribe from Plaintiff's website, and therefore, from Plaintiff's services.

35. Plaintiff scrambled to determine why existing and prospective customers were seeking to unsubscribe from its services.

36. Around July 2018, Plaintiff learned that Defendant sold its client list that included 750 clients to Plaintiff's competitor.

37. On or around August 3, 2018, Plaintiff alerted Defendant that Defendant had sold Plaintiff's customer list to Plaintiff's competitors.

38. Defendant admitted it had sold Plaintiff's customer list to Plaintiff's competitors.

39. Upon information and belief, Defendant continues to sell Plaintiff's customer list, among other information, to Plaintiff's competitors.

40. Plaintiff implemented a number of steps to prevent its competitors from obtaining its customer list.

41. For example, Plaintiff's customer list is password protected and only individuals within Plaintiff's management can access Plaintiff's customer list.

42. Third parties, like Defendant, who are not within Plaintiff's management team, but who seek access to Plaintiff client list, must sign an agreement that imposes a duty not to disclose Plaintiff's client list.

43. Plaintiff's business and the services Plaintiff offers affect interstate commerce because Plaintiff does business in Georgia and because Plaintiff deals with vendors across the United States. In addition, some of Plaintiff's students are from Georgia.

## Count I: Misappropriation of Plaintiff's Trade Secrets in Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1831 et seq.

44. Plaintiff incorporates the foregoing allegations as if they were fully set forth in this paragraph.

45. Plaintiff operates its business and provides services in interstate and foreign commerce, transacting and doing business with customers, vendors and others in Florida, New York, Georgia and in other states.

46. Among other information, Plaintiff's trade secrets include business and marketing plans, list of clients to pursue, client servicing procedures, strategies about aspects of Plaintiff's competitors, and strategies about competing with Plaintiff's competitors.

47. Trade secret is defined as: "all forms of financial, business, scientific, technical,

economic, or engineering information." 18 U.S.C. 1839(3).

48. The information identified above constitute trade secrets.

49. Plaintiff owned the trade secrets and Defendant did not have any property interest in or claim to the trade secrets.

50. Plaintiff obtains economic value from the foregoing trade secrets and Plaintiff devoted substantial resources, time, and investment in developing and using its trade secrets.

51. Plaintiff's trade secrets are not common knowledge to anyone outside of Plaintiff's management. It is highly valuable to Plaintiff and would take a considerable amount of time, effort, and expense to duplicate this information without access to Plaintiff's confidential information and trade secrets.

52. Plaintiff has made considerable efforts to prevent disclosure of its confidential information and trade secrets.

53. Defendant had a duty to keep Plaintiff's confidential information and trade secrets intact and not to use, exploit, or disclose such information other than for the benefit of Plaintiff.

54. Despite that duty, Defendant has knowingly and willfully acquired Plaintiff's confidential information and trade secrets.

55. Defendant has wrongfully and knowingly acquired Plaintiff's trade secrets. At the time Defendant acquired such information, Defendant knew or had reason to know that

Plaintiff trade secrets were acquired by improper means.

56. Defendant's acts identified herein, as well as other acts yet to be discovered, constitute misappropriation of trade secrets.

57. As a direct result of Defendant's wrongdoing, Plaintiff has been damaged in an amount to be determined at trial, but which cannot be compensated by money alone.

58. Defendant's actions were committed knowingly, willfully, and in conscious disregard of Plaintiffs rights. Accordingly, Plaintiff is entitled to recover actual and exemplary damages in an amount to be determined at trial.

59. Because of Defendant's misappropriation of trade secrets, Plaintiff is entitled to treble damages, attorney's fees, and costs.

60. Plaintiff is also entitled to injunctive relief against all Defendants pursuant to 18 U.S.C. § 1836(3)(A).

### Count II: Misappropriation of Trade Secrets in Violation of New York Law

61. Plaintiff incorporates the foregoing allegations as if they were fully set forth in this paragraph.

62. Under New York law, a trade secret is any "formula, pattern, device, or compilation of information which is used in one's business, and which gives one an opportunity to obtain an advantage over competitors who do not know or use it."

63. Plaintiff's trade secrets as described above, meets this definition.

64. Plaintiff possessed its trade secrets and took steps to shield and protect the disclosure of

its trade secrets by limiting the individuals who could access its trade secrets.

65. Defendant accessed, used, and is using, Plaintiff's trade secrets and provided Plaintiff's trade secrets to Plaintiff's competitors in violation of the Subscription Agreement and in violation of common law obligations to hold Plaintiff's trade secrets in strict confidence.

66. Defendant breached its duty to Plaintiff when it accessed, used, and provided Plaintiff's trade secrets to Plaintiff's competitors.

67. Plaintiff has suffered damages in an amount to be proved at trial.

### Count III: Breach of Contract

68. Plaintiff incorporates the foregoing allegations as if they were fully set forth in this paragraph.

69. The Subscription Agreement constitutes a contract between the parties. Further, the Subscription Agreement is supported by consideration: Plaintiff paid Initiation and Subscription Fees in exchange for Defendant providing web design and marketing services to Plaintiff.

70. Plaintiff performed its payment obligations under the Subscription Agreement by making payments to Defendant as required by the Subscription Agreement.

71. Plaintiff also performed its other obligations under the Subscription Agreement by refraining from competing with Defendant.

72. Defendant breached its obligations to Plaintiff when Defendant disclosed Plaintiff's trade secrets to Plaintiff's competitors.

73. Plaintiff has suffered damages because of Defendant's breach of the Subscription Agreement in an amount to be proved at trial.

### COUNT IV:  Unjust Enrichment

74. Plaintiff incorporates the foregoing allegations as if those allegations are fully set forth in this paragraph.

75. Defendant was enriched when it sold 750 of Plaintiff's customer list to Plaintiff's competitors.

76. Defendant was enriched at Plaintiff's expense.

77. Defendant was enriched under circumstances that makes it unjust for Defendant to retain the enrichment.

78. Plaintiff is entitled to damages to be proven at trial.

April 15, 2019
New York, New York

                                                                                                                      **RESPECTFULLY SUBMITTED**,

                                                                                                                      By: /s/ T. Edward Williams, Esq.
                                                                                                                      T. Edward Williams, Esq.
Peyrot & Associates, PC
62 William Street 8th Floor
Tel: 646.650.2785
Direct: 646.650.5139
Email: Edward.williams@peyrotlaw.com
*Attorneys for Plaintiff*