UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
MARKY'S MARTIAL ARTS, INC.　　　　　　　　:
DBA KILLEARN LAKES TAEKWONDO,　　　　 :
　　　　　　　　　　　*Plaintiff*,　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:　　19-CV-03363 (ALC) (VF)
　　　　-against-　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:　　**OPINION & ORDER**
FC ONLINE MARKETING, INC.　　　　　　　　:
dba FCOM,　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　*Defendants*.　　　　　 :
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
-------------------------------------------------------------------- :
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　x

**ANDREW L. CARTER, JR., District Judge:**

FC Online Marketing Inc. d/b/a FCOM ("Defendant") filed a motion to set aside the entry of default and the default judgment entered January 13, 2023 ("Default Judgment") that the Plaintiff Marky's Martial Arts, Inc. ("Plaintiff") obtained pursuant to Fed. R. Civ. P. 55(c) and Fed. R. Civ. 60(b)(1), (4), and (6). For the reasons set forth below, this motion is **GRANTED**.

## BACKGROUND

The Court assumes the parties' familiarity with the facts of this case, which are set forth more fully in the Complaint. ECF No. 1. In the Complaint, Plaintiff alleges that in 2016, the Plaintiff and Defendant entered into an agreement to build Plaintiff's website and optimize that website to allow the Plaintiff to attract more customers. *Id*. at ¶¶ 1, 10, 15. The parties entered into a Subscription Membership Agreement ("Subscription Agreement"), which requires FCOM to preserve Plaintiff's trade secret and confidential information in perpetuity. *Id*. at ¶¶ 15, 24. Around January 2018, Plaintiff discovered that Defendant was allegedly selling the exact same website that the Defendant sold the Plaintiff to Plaintiff's competitors. *Id*. at ¶ 31. Following this

1

discovery, Plaintiff terminated the Subscription Agreement in February 2018. *Id*. at ¶ 33. On or around July 9, 2018, Plaintiff received messages from existing and prospective customers who sought to unsubscribe from Plaintiff's website and Plaintiff's services. *Id*. at ¶ 34. Around July 2018, Plaintiff learned that the Defendant sold its client list that included 750 clients to Plaintiff's competitor. *Id*. at ¶ 36. On or around August 3, 2018, Plaintiff alerted the Defendant that Defendant had sold Plaintiff's customer list to Plaintiff's competitors. *Id*. at ¶ 37. Defendant allegedly admitted that it sold Plaintiff's customer list to Plaintiff's competitors. *Id*. at ¶ 38.

## PROCEDURAL HISTORY

On April 15, 2019, Plaintiff filed a Complaint against Defendant alleging (1) misappropriation of Plaintiff's Trade Secrets in violation of the Defend Trade Secrets Act ("DTSA") 18 U.S.C. 1831 et. seq."; (2) misappropriation of trade Secrets in violation of New York Law; (3) breach of contract; and (4) unjust enrichment. ECF No. 1.

On June 7, 2019, Plaintiff effectuated service of process upon Defendant by delivering a copy of the Summons and Complaint to the New York Secretary of State pursuant to NY BCL 306. ECF No. 6. On September 11, 2019, Plaintiff moved for an entry of default against Defendant after the Defendant filed to appear, answer, or otherwise respond to the Complaint. ECF No. 7. On September 23, 2019, Plaintiff filed a Motion for Default Judgment pursuant to Fed. R. Civ. P. 55. ECF Nos. 12-13.

On or about September 14, 2022, Judge Figueredo issued a Report and Recommendation to the Court which recommended that default judgment be entered against Defendant. ECF No. 47. On January 12, 2023, this Court adopted the Report and Recommendation in light of the lack of any objections. ECF No. 51. On January 13, 2023, a Clerk's Judgment was entered which

awarded the Plaintiff $216,205.92 in compensatory damages, $216,205.92 in punitive damages, $41,640.00 in attorney's fees, $3,417.13 in costs, and post-judgment interest. ECF No. 52.

On June 30, 2023, Plaintiff served a Restraining Notice and Information Subpoena, along with a Subpoena To Testify at a Deposition in a Civil Action, on FCOM's former CEO, Michael Parella, at his home address. ECF No. 54-4. On October 17, 2023 during a telephone conference, the Court directed Mr. Parrella to inform the Court whether he intends to retain counsel or proceed *pro se* by October 31, 2023. On November 2, 2023, after failing to comply with the previous directive, the Court ordered Mr. Parrella to file a response by November 6, 2023 as to whether he intended to retain defense counsel or proceed *pro se*. ECF No. 60.

On January 16, 2024, Defendant filed a letter seeking a pre-motion conference in connection with a motion to vacate the Default Judgment pursuant to Fed. R. Civ. P. 55(c) and Fed. R. Civ. 60(b)(1), (4), and (6). ECF No. 68. On January 19, 2024, Plaintiff filed a letter in opposition. ECF No. 69. On February 28, 2024, Defendants filed a motion to set aside the default judgment. ECF No. 72. On March 20, 2024, Plaintiffs filed a memorandum in opposition to the motion to set aside the default judgment. ECF No. 74. On March 27, 2024, Defendant filed a reply memorandum in support of the instant motion. ECF No. 77. The Court considers this motion fully briefed.

## LEGAL STANDARD

When a party fails to defend an action, Federal Rule of Civil Procedure 55 permits either the clerk of court or the district court to enter a default against that party. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). If the court determines that the plaintiff's allegations establish that the defendant is liable as a matter of law and that the plaintiff is entitled to damages as a result following the entry of that default, the court may enter a final

default judgment. *Id.* at 128–29, 137 & n.23; *see also Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015). Fed. R. Civ. P. 55(c) provides that "for good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Defendants move to set aside the default judgment on the grounds that the judgment had occurred as a result of "inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), and that the judgment is void for lack of service, Fed. R. Civ. P. 60(b)(4). "A motion to vacate a default judgment is addressed to the sound discretion of the district court." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) (internal citations omitted).

In deciding such motions, courts in this Circuit apply a three-factor test: (1) whether the default was willful; (2) whether defendants demonstrate the existence of a meritorious defense to the defaulted claims; and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice. *W.B. David & Co., Inc. v. De Beers Centenary AG*, 507 Fed.Appx. 67, 69 (2d Cir. 2013) (internal citations omitted). Determination of whether to set aside a default must take into account the strong preference for resolving disputes on the merits. *Wildflower + Co. v. Mood Apparel, Ltd.*, 338 F.R.D. 192 (S.D.N.Y. 2021). In the Second Circuit, there is a strong "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993); *see also Johnson v. New York University*, No. 18-3305 (2d Cir. Jan 31, 2020) (summary order). While default procedures play an important role in keeping "the orderly and efficient of justice," they are "generally disfavored" and "reserved for rare occasions". *Id*. Therefore, when doubt exists as to whether a default should be vacated, "the doubt should be resolved in favor of the defaulting party," *id*., so as to ensure that actions will be resolved on the merits. *Sony Corp. v. S.W.I. Trading, inc.*, 104 F.R.D. 535, 539-40 (S.D.N.Y.

4

1985). Nevertheless, default procedures "provide a useful remedy when a litigant is confronted by an obstructionist adversary," *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir.1993). Thus, in analyzing a motion to vacate, the Second Circuit has instructed courts to remain mindful of the admonition that "final judgments should not be lightly reopened." *Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir.1986) (internal quotation marks and citations omitted).

## DISCUSSION

The Court considers each "good cause" factor in turn below and concludes that these factors weigh in favor of granting vacatur of the Default Judgment.

### I. Default May Not Be Willful

This Court finds that the FCOM's default may not be willful. The Second Circuit has interpreted "willfulness" in the context of a default as more than mere negligence or carelessness; it refers to conduct that is "egregious" and "not satisfactorily explained." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). When a defendant fails to update its address with the Secretary of State, courts inquire whether that failure constitutes willful conduct for purposes of default. *Byrnes v. Yeats Constr. Mgmt., Inc.*, No. 12CV05355NSRLMS, 2017 WL 4045484, at *6 (S.D.N.Y. Sept. 11, 2017) (vacating a default judgment despite defendant's failure to correct its address with the Secretary of State). Indeed, the Second Circuit holds that, "negligen[ce]," "carelessness," and even "gross negligence," do not necessarily constitute willful conduct. *McNulty*, 137 F.3d at 738; *Am. Alliance Ins. Co., Ltd.*, 92 F.3d at 61.

The Defendant argues that FCOM did not receive the service of process forwarded by the Secretary of State and remained unaware of the lawsuit for some time because that address was not current due to FCOM's failure to advise the Secretary of State of a change of address. ECF No. 72-3 at 9. Plaintiff purportedly delivered a copy of the Summons and Complaint to an

5

outdated address listed with the Secretary of State, 3601 Hempstead Turnpike, Suite 503, Levittown, New York ("Levittown Address"). Defendant moved from the Levittown Address to 1844 Lansdowne Ave, Merrick, New York ("Merrick Address") between February and March 2015. The Defendant argues that the Defendant's CEO, Michael Parrella, mistakenly believed that the Levittown Address listed with the Secretary of State had been updated at the time that the Defendant moved from the Levittown Address to the Merrick Address. Defendant claims that it did not receive notice of this action until recently when Plaintiff notified Mr. Parrella at his home address of proceedings to enforce the default judgment. *Id*.

In response, Plaintiff argues that FCOM was in fact aware of the lawsuit in May 2019 and chose to ignore the lawsuit. Plaintiff claims that on May 19, 2019, an individual who identified himself as "Michael" and as FCOM's CEO contacted Plaintiff's then counsel T. Edward Williams, Esq. (i) to confirm that FCOM had received a copy of the Summons and Complaint, and (ii) to request an extension to allow FCOM additional time to hire an attorney. *See* Declaration of T. Edward Williams at ¶¶ 8, 11-17. According to Mr. Williams' declaration, he billed 0.5 hours to this lawsuit after he had a "[t]elephone conference with [FCOM's] representative regarding need for additional time to seek counsel." *Id* at ¶ 4; *see also* Exhibit C. On May 31, 2019, Mr. Williams notified the Plaintiff via email that he had spoken to "the other side [who] requested additional time to seek an attorney." *Id*. at ¶12; *see also* Exhibit B.

Here, FCOM's conduct throughout the course of this litigation may not be willful for numerous reasons. First, Defendant argues that it was unaware that Plaintiff filed its complaint because it was not personally served with the summons and complaint and service of all subsequent proceedings were made at an address which Plaintiff knew was improper for service. Defendant also states that by Plaintiff's admission, the complaint wasn't served on the Secretary

6

of State until June 7, 2019, which is after May 2019 when the purported call between counsel took place. Second, there is support in the district that a defendant's failure to update an address with the Secretary of State does not by itself mandate a finding of willfulness. *FedEx TechConnect, Inc. v. OTI, Inc.*, 2013 WL 5405699, at *6 (S.D.N.Y. Sept. 23, 2013); *see also Bangkok Bank Ltd. v. Wallant Int'l Trade, Inc.,* No. 88 Civ. 2675(JFK), 1989 WL 156299, at *2 (S.D.N.Y. Dec.18, 1989) (rejecting argument that defendant's failure to update address with Secretary of State was willful). Finally, while FCOM offers no satisfactory explanation for their repeated instances of non-compliance with post-judgment discovery, evasiveness does not justify default judgment after the judgment was issued.

## II.     Setting Default Aside Would Not Prejudice FCOM

This Court finds that setting aside the Default Judgment would not prejudice FCOM. In assessing the prejudice factor, the court must address "whether and to what extent vacating the default judgment will prejudice the non-defaulting party." *N.Y. v. Green,* 420 F.3d 99, 110 (2d Cir. 2005). Some delay is inevitable when a motion to vacate a default judgment is granted, therefore "delay alone is not a sufficient basis for establishing prejudice." *Davis v. Musler*, 713 F.2d 907, 916 (2d. Cir. 2002). Delay which "may thwart plaintiff's recovery or remedy may constitute prejudice." *Green* at 110. Delay which may result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion rises to the level of prejudice. *Davis,* at 916 *citing* 10A Charles A. Wright, et al., Fed. Practice & Procedure: Civil § 2699, at 169 (3d ed.1998).

Here, vacating the default would not further prejudice the Plaintiff. Plaintiff argues that it would be "virtually impossible" for Marky's to track down former martial arts students who switched to its competitor because of FCOM's misconduct. ECF No. 73 at 8. However, this

7

potential loss of evidence is insufficient to establish prejudice. *See Addison v. Reitman Blacktop*, Inc., 272 F.R.D. 72, 81-82 (E.D.N.Y. 2010) ("[T]he Plaintiffs argue that because of the Defendants' delay there may have been a degradation of evidence such that memories of potential witnesses may have faded or documents may have been lost or destroyed. The Court finds that this speculative prejudice does not outweigh the fact that the Defendants['] default was not willful and that the Defendants have presented a meritorious defense."); *see also S.E.C. v. McNulty*, No. 94 CIV. 7114 (MBM), 1996 WL 422259, at *5 (S.D.N.Y. July 29, 1996), aff'd, 137 F.3d 732 (2d Cir. 1998). Furthermore, Plaintiff argues that FCOM's "evasive conduct, including ignoring subpoenas and depleting its corporate account" is demonstrative that vacating the default would further prejudice Marky's. ECF No. 73 at 23. Regardless of these alleged facts, the Plaintiff's future litigation conduct is not relevant to understanding whether the Plaintiff would be prejudiced if we grant vacatur. *Wildflower + Co. v. Mood Apparel*, Ltd., 338 F.R.D. 192, 197 (S.D.N.Y. 2021) ("[W]e question whether the predicted nature of an opponent's future litigation conduct is relevant to the prejudice analysis.").

      **III.    Meritorious Defenses Are Presented**

This Court finds that the Defendant presents a meritorious defense. To establish the existence of a meritorious defense, a defendant must present some evidence beyond mere conclusory denials. *Pecarsky v. Galaxiworld.com Ltd.,* 249 F.3d 167, 173 (2d Cir.2001). The test is whether "the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp. v. Diakuhara.,* 10 F.3d 90, 98 (2d Cir. 1993); *see also In re Martin–Trigona,* 763 F.2d 503, 505 n. 2 (2d Cir.1985) ("[I]n order to set aside a default, the defaulting party must present a meritorious defense demonstrating that if relief is granted the outcome of the suit may be different than if the entry of default or the default judgment is allowed to stand .... Otherwise,

8

the defaulting party may be held to admit all the factual allegations of the complaint." (internal citations omitted)). Though a defendant need not "conclusively establish the validity of the defense asserted, [it] must, nonetheless, articulate a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a 'serious question' as to the validity of those allegations." *Salomon v. 1498 Third Realty Corp.,* 148 F.R.D. 127, 130 (S.D.N.Y.1993) (quoting *Davis,* 713 F.2d at 916).

Here, FCOM categorically denies selling the Plaintiff's customer list to Plaintiff's competitors and denies having committed any trade secret violation. Because default judgments are generally disfavored, criteria for vacating a default judgment under Federal Rule of Civil Procedure governing motions for relief from judgment, including the "meritorious defense" factor, should be construed generously. *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158 (2d Cir. 2004). In his affidavit, Mr. Parrella claims that FCOM never "sold a customer list of [Marky's] . . . [or ever] admitted having made such nonexistent sale." Affidavit of Michael Parrella at 4-5 (emphasis added). The DTSA defines "misappropriation" to include "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied consent" in specified circumstances. 18 U.S.C. § 1839(5). A viable claim under the DTSA therefore requires a showing that FCOM disclosed Marky's proprietary and trade secret data to a third party, which can occur by a mere breach of an agreement not to disclose or disseminate information.

In this case, Marky's started to receive messages from existing and prospective customers who sought to unsubscribe from their website and services. Marky's then discovered that FCOM sold Marky's client list of over 750 customers and potential customers to Tiger Rock. On August

3, 2018, Marky's informed FCOM that it knew that it sent an email that included Plaintiff's email address and Plaintiff's email list. According to FCOM's employee Adam Kifer, "[t]he error was made on our part. We had a former employee that sent the email out to Tiger Rock's email lists and had mistakenly selected your list as well." *See* Declaration of Blaine Marky. Here, FCOM does not dispute disclosure of this list but rather argues that the list of email addresses was not a "trade secret" that the Defendant obtained and owned. Furthermore, FCOM claims that there was never a "sale" of a customer list. Therefore, these claims constitute a complete defense under the DTSA.

## CONCLUSION

For the reasons set forth above, Defendant's motion to set aside the default judgment is **GRANTED**. The Court hereby orders a telephonic status conference scheduled for October 17 at 3:30 p.m. The Clerk of Court is respectfully directed to terminate ECF No. 68.

**SO ORDERED.**

**Dated:** **September 30, 2024**
New York, New York

　　　　　　　　　　　　　　　　　　　　**ANDREW L. CARTER, JR.**
　　　　　　　　　　　　　　　　　　　　**United States District Judge**